**BROWN & CONNERY, LLP**
By: Stephen J. DeFeo
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
(856) 854-8900
(856) 858-4967 (facsimile)
Attorneys for Defendant,
Gordon J. McDonald

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEVENSON ENVIRONMENTAL SERVICES, INC.<br><br>Plaintiff,<br><br>vs.<br><br>GORDON J. MCDONALD, Individually and d/b/a JMK LANDSCAPING and GENERAL MONITORING and GENERAL TANK and GENERAL CHEMICAL, etc., GMEC, INC., a/k/a GENERAL MONITORING AND ENVIRONMENTAL CONTROL, INC., PATRICIA MCDONALD, FLOWERS BY SWEETENS, INC., MATTHEW MCDONALD, KEVIN MCDONALD, and THOMAS MCDONALD<br><br>Defendants. | Civil Action No.: 08-CV-1386<br><br><br>DECLARATION OF GORDON MCDONALD IN SUPPORT OF MOTION TO DISCHARGE LIS PENDENS ON SHORT NOTICE |

Gordon McDonald, of full age, declares as follows:

1. I am Gordon McDonald, an individual defendant in the above-captioned

matter, improperly referred to as Gordon J. McDonald.

2. I am a shareholder and the President and Secretary of defendant GMEC, Inc. ("GMEC"), a New Jersey Subchapter S Company, which is also a defendant in this matter.

3. I have owned and operated GMEC since 1994 when it was formed by me pursuant to instructions from Mr. Michael Elia, the President of plaintiff, Sevenson, Inc. ("Sevenson"). GMEC has provided services related to the environmental remediation industry, including consulting services, assistance with permitting and licensing and other services.

4. Due to a series of unforeseeable events, I was unable to retain counsel to file a timely response to Sevenson's First Amended Complaint, and on August 11, 2008 I became aware that defaults had been entered against GMEC and me. On September 26, 2008, I was able to retain the law firm of Brown & Connery, LLP to represent me and GMEC in this matter, and on October 7, 2008 I filed a motion to vacate the defaults. That motion is currently pending, and has a return date of November 3, 2008.

5. I make the instant Declaration in support of my Motion for an Order Discharging Notice of Lis Pendens.

6. The Amended Complaint filed by Sevenson, my former employer, alleges that GMEC and I misappropriated Sevenson funds and solicited and accepted unauthorized payments and gifts from subcontractors. The allegations in Sevenson's Amended Complaint are completely untrue, as set forth in detail in the previous Declaration which I made in support of my Motion to Vacate Defaults. See Amended Complaint, Exhibit A; Declaration of Gordon McDonald dated October 6, 2008, Exhibit

1043116.1

B. at ¶¶ 21-24;

7. While the first Twenty-Two Counts of Sevenson's Amended Complaint seek money damages and an equitable accounting against me and the other defendants, Count Twenty-Three asks the Court to impress a constructive trust upon my home on Venicean Road in Sea Isle City, New Jersey. See Exhibit A at ¶¶ 254-264. My wife and I purchased this home for $790,000.00 on June 30, 2003. See HUD Settlement Statement dated June 6, 2003 and certified check dated June 6, 2003, Exhibit C.

8. As its basis for its demand for imposition of a constructive trust and its subsequent filing of a lis pendens on my home, Sevenson alleges in its Complaint that I used funds which I wrongfully diverted from Sevenson to purchase and improve property, including a check I received from BEI on July 11, 2003 in the amount of $177,000.00, and the proceeds from a bridge loan of $145,000.00 made by Sevenson to me and my wife, which I repaid with funds wrongfully diverted from Sevenson. See Exhibit A, at ¶ 255-261.

9. These allegations are completely untrue. The funds that I used to purchase my home on Venicean Street came from the sale of several other properties which I owned, including my former marital residence on 28th Street in Sea Isle City, as well as the sale of my wife's flower business.

10. To be specific, my primary source of funds for the my home on Venicean was the sale of a property owned by my wife and me located at 30 28th Street, in Sea Isle City. We originally purchased this residence on November 7, 1998 for $ 278,000.00. My wife and I sold this property on June 6, 2003 in order to acquire the Venicean Street property.

1043116.1

11. As evidenced by the attached HUD Settlement Statement and certified check, I received a net payment of $464,475.67 from the sale of the 28th Street property. See certified check Exhibit C.

12. As indicated on the HUD Settlement Sheet for the Venicean Steet property, under the heading "Amounts Paid by or in Behalf of Borrower" in line 208, I paid exactly $467,475.90 in cash toward the purchase price of the house. See HUD Settlement Statement for Venicean Street property, Exhibit D, line 208.

13. Sevenson cannot seriously claim that this $467,475.90, which indisputably came directly from the sale of a home I purchased in 1998, represents monies that I wrongfully diverted or misappropriated from Sevenson.

14. As to the remaining $332,423.10 which my wife and I paid for the Venicean Street property, $89,900.00 came from the sale of my wife's flower business, Sweeten's, on December 18, 2002. See Flowers by Sweeten's Agreement for Sale of Assets dated December 18, 2002, Exhibit E.

15. An additional $145,000.00 came from a bridge loan from Sevenson to me pursuant to an agreement which we entered into on June 9, 2003. See Balloon Promissory Note – Secured dated June 9, 2003, Exhibit F.

16. Michael Elia, the president of Sevenson, offered to make this bridge loan to me after he learned that my wife and I had applied for a mortgage to purchase the property. In fact, my wife and I had been pre-approved for a $216,000.00 mortgage with First Horizon Home Loan Corporation as of December 21, 2002. See Mortgage proposal prepared by First Horizon Home Loan Corporation, Exhibit G.

17. I repaid this loan from Sevenson, with interest, on September 8, 2003. See

1043116.1

canceled check no. 512, Exhibit H. While I did pay this check from my business account, the monies in that account were not wrongfully diverted or misappropriated and Sevenson cannot prove otherwise.

18. The $97,523.10 balance remaining on the $790,000.00 purchase price after taking into account the proceeds from the sale of our house on 28th Street, the sale of my wife's flower business, and the bridge loan, came from monies we received from the sale of two properties: one located on 217 E. Atlantic Avenue, in Clementon, New Jersey and the other located at 8 Yardley Court, Sicklerville, New Jersey, and from personal savings my wife and I had accumulated over several years.

19. None of the money my wife and I used to purchase the Venicean Street property came from funds which I wrongfully diverted from Sevenson. These allegations in Sevenson's Complaint are completely false.

20. I believe that Sevenson included the count in its Complaint asking the Court to impress a constructive trust on my Venicean Street home despite the fact that it has no evidence whatsoever that the property was purchased with misappropriated funds, so it had a basis upon which to file a notice of *lis pendens*, thereby preventing me from selling my home, or using the equity in the home to help fund my defense in this case.

21. Indeed, given the fact that the vast majority of my assets are tied up in my home, and the fact that I will likely be required to expend substantial non-liquid assets in order to defend myself in this action, my wife and I have no alternative but to sell the Venicean Street property and move to a smaller and less expensive house.

22. Our Venicean Street home was under contract to be sold on October 31, 2008. See Contract of Sale for 4478 Venicean Street, Sea Isle City, Exhibit I. The

closing did not occur on that date because of the *lis pendens* which remains as a cloud on the title to the property.

23. Time is of the essence with regard to the sale, as the Haughs, the prospective purchasers of the property, have advised that they are buying this property as part of a Section 1031 "like-kind" exchange and have a limited window of time to purchase a property to replace the property they are selling. The Haughs have advised that if closing is not consummated by November 7, 2008, they will cancel the contract and take such further action against me as is warranted by the contract for sale.

24. The Haughs' title company, Shore Title will not insure title to the property unless the notice of *lis pendens* is satisfied or removed.

25. If the Court has any concerns about discharging the *lis pendens*, I am willing to post a bond to ensure that the closing occurs as is now scheduled on November 7, 2008.

26. I declare under penalty of perjury that the foregoing is true and correct.

Gordon McDonald

Dated: 11-3-08

1043116.1