IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEVENSON ENVIRONMENTAL SERVICES, INC.<br><br>Plaintiff<br><br>vs.<br><br>GORDON J. MCDONALD, et al.<br><br>Defendants. | DECLARATION<br><br>NO. 08-cv-01386 |

Alan J. Bozer declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am a partner in Phillips Lytle LLP, attorneys for plaintiff Sevenson Environmental Services, Inc. ("Sevenson") in this action.

2. I offer this Declaration in opposition to the motion by defendant Gordon D. McDonald ("McDonald") for an order discharging the *lis pendens* filed in this proceeding against property McDonald owns jointly with his wife Patricia McDonald (the "Sea Isle Property"). This submission is made on only a few hours notice as a result of a late filing by McDonald and plaintiff has not had a meaningful opportunity to assemble its case properly for submission.

3. A true and correct copy of the Amended complaint filed in this case is attached as **Exhibit A (**Docket No. 16). Plaintiff notes that McDonald is currently in default of pleading, as discussed below.

4. In a letter previously filed with the Court dated November 4, 2008 (Docket No. 115), I opposed a request for a motion to discharge the *lis pendens* upon shortened time. Yesterday, having received no response to the letter, I wrote again to opposing counsel urging that an escrow agreement be prepared and circulated so as to avoid a last-minute rush to arrange things. Attached as **Exhibit B** is a true and correct copy of that letter. Plaintiff stands ready to enter into an escrow agreement as outlined in **Exhibit B.**

**Background**

5. The matters underlying the present litigation have to do with embezzlements, fraud, etc. by McDonald from the employer who trusted him. The allegations set out in the Amended Complaint (**Exhibit A**) served upon McDonald over six months ago are all based upon evidence collected against him, including from a bank account McDonald controlled in the name of GMEC, Inc. (the "GMEC Account"). McDonald deposited the proceeds from his nefarious crimes against his employer into the GMEC Account. Attached as **Exhibit C** is a copy of a report categorizing the deposits and payments out of the GMEC Account.

6. Attached as **Exhibit D** are true and correct copies of account statements received from Wachovia Bank in response to a subpoena out of the Court of Common Pleas for the County of Philadelphia, Commonwealth of Pennsylvania. Using these bank records, plaintiff was able to trace unauthorized funds that McDonald received from subcontractors at jobs where he was employed by Sevenson. Sevenson has

certified copies of deposit slips and payments checks for the unauthorized payments. These documents can be produced at anytime the Court directs.

7. The following bank records at **Exhibit D** show the flow of McDonald's fraudulently obtained funds into the Sea Isle Property (reference is to the last three numerals of the bates stamps on **Exhibit D** in the lower right-hand corner):

| Page | Description |
|---|---|
| 444 | Account statement for June, 2003, which is when McDonald and Patricia McDonald purchased the Sea Isle property; |
| 444 | A fund transfer of $177,000.00 was received on June 11, 2003 from Bennett Environmental, Inc. ("BEI"). This is an unauthorized payment referred to in the Amended Complaint at paragraph 119. |
| 445 | McDonald transferred $165,500.00 from the GMEC Account to an account in his name and Patricia McDonald's name at Commerce Bank, N.A. (the Commerce Bank records for this time have <u>not</u> been produced by Patricia McDonald). Upon information and belief, these funds were used to purchase the Sea Isle Property. |
| 446 | The daily balance summary for the GMEC account shows that as a result of the unauthorized payment by BEI to McDonald on June 11, the balance increased from $36,983.35 to $211,647.40. The transfer to the Commerce Bank account on June 17, 2003 was not possible without the BEI deposit, as shown by the daily balance before and after that transfer. |
| 448 | McDonald received an unauthorized payment of $76,095.00 from BEI on July 21, 2003. Amended Complaint ¶119. |
| 449 | After receiving the BEI payment, McDonald used the funds to pay off credit cards, for expensive dining, etc. |
| 450 | At the end of July, as a result of the BEI unauthorized payments, the GMEC account balance was $78,271.81. |

| | |
|---|---|
| 452 | McDonald received another $249,910.00 unauthorized payment from BEI on August 26, 2003.  There is also another deposit of $33,785.00 that month, which was an unauthorized payment received that month from Ray Angelini, Inc. (also a defendant in this case).  See Amended Complaint ¶ 121. |
| 453 | On August 21, 2003, McDonald sent $28,880.00 to DCP Technical Services in Ontario.  It is believed that this company was controlled by other defendants in this lawsuit. See Amended Complaint ¶ 174. |
| 454 | As of the end of August, 2003, after the unauthorized payments having been deposited, the GMEC accounts have $300,713.38 in it. |
| 455 | On September 10, 2003, McDonald "paid back" the Sevenson loan he had received for the purchase of the Sea Isle Property with GMEC check no. 512.  As the funds tracing before this shows, the payment to plaintiff on September 10, 2003 came out of unauthorized payments received by McDonald from other defendants in this case. |

8. McDonald also used the GMEC Account to improve the Sea Isle Property. Attached are true and correct copies of some of those payment checks at **Exhibit E** showing improvements to the Sea Isle Property and other payments:

> Swimming pool installation;
> Carpeting;
> Yacht Club fees;
> Electrical work, kitchen work; and
> Window treatments.

9. Many of the payments out of the GMEC Account are to "cash," or to McDonald personally and accordingly impossible to trace.

10. In the course of this litigation, discovery has gone forward against one of the non-defaulting defendants, Patricia McDonald.  Patricia McDonald is McDonalds'

- 4 -

wife. In order to follow and trace the funds, which McDonald improperly received from Sevenson and others, plaintiff issued a discovery request for documents to Patricia McDonald. A true and correct copy of that document request is attached as **Exhibit F**.

11. Patricia McDonald was late in responding. Ultimately, plaintiff agreed that she would have until October 23, 2008 to respond. Some documents were received on October 23, 2008.

12. After reviewing the documents received from Patricia McDonald, it was noted that many banking documents were missing, particularly from the critical period of 2002 – 2005 when McDonald's embezzlements and defalcations were in full swing. Attached as **Exhibit G** is a copy of a letter detailing the deficiencies and giving Patricia McDonald until November 5, 2008 to produce.

13. I received a telephone call on November 4, 2008 from the attorney for Patricia McDonald at which time he stated that he would be unable to provide the documents requested by the requested date. Consistent with that advice, no further documents have been received from Patricia McDonald and the missing documents for a critical time period remains.

14. A motion to compel production of those records may be pursued shortly by plaintiff. Plaintiff is not able on short notice to include all tracing of proceeds.

**Defalcations and Fraud**

15. Upon receiving the first information regarding McDonald's frauds, plaintiff carefully reviewed its accounts at the Diamond Alkali site. The Diamond

Alkali site is located in Newark, New Jersey. McDonald was Sevenson's Project Manager at that site for years. As a result of that review, plaintiff determined amounts which McDonald improperly acquired for his personal purposes. He did so through checks made payable to his affiliated company names, or other fictitious names.

16. McDonald wrote checks from field checking accounts primarily at the Diamond Alkali Site to certain payee "entities" and individuals which investigation has found to be either (a) fictitious or (b) affiliated with McDonald. The specific payee "entities" or individuals are listed on **Exhibit H** in a spreadsheet showing payment checks out of Sevenson's funds in the Diamond Alkali Site field account. McDonald was entrusted with control of that field account by Sevenson. The Diamond Alkali Site field checking account was to be used for expenses associated with that site. It is Sevenson's corporate policy that, except upon express approval with appropriate arrangements made, field accounts for such sites may not be used for any other purpose. The total thus converted by McDonald was $193,836.58.

17. Sevenson has gathered supporting documentation for the payments listed on **Exhibit H**, including the "batch report" listing of the expense and purpose, the invoice purportedly supporting the expense, and the payment check on the field account for the expense. In each instance, the listed payment was unauthorized as it was not for an expense associated with the Diamond Alkali Site. Included are false entries on the batch reports and illegitimate invoices.

18. Certain of the checks written by McDonald to the following payees were deposited in the GMEC Account:

- 6 -

>   General Monitoring;
>   JMK, Inc.;
>   JMK Landscaping;
>   JMK Landscape;
>   General Tank;
>   General Chemicals, and
>   Nor'easter Marine.

19. With only one exception, plaintiff has found that the payees on **Exhibit H** were not real business entities. The one exception is Nor'easter Marine. A company by the name "Nor'easter Marine L.L.C." was formed in New Jersey in 1999 by "Jeffery D. McDonald" (believed to be Gordon McDonald's son) listing as its address a Woodbury, New Jersey address (532 North Broad St.) shared by a flower shop (Sweeten Corp. d/b/a "Flowers by Sweetens") then owned and operated by Gordon McDonald's wife Patricia.

20. Checks written to payees C. Lopes, C. Lopez, Carlos Lopes and Carlos Lobes were sometimes deposited in the account of Solar Do Minho, a Newark, New Jersey restaurant frequented by Gordon McDonald. Carlos Lopes is, or was, a partner in the Solar Do Minho restaurant. Other checks to these payees were deposited in the account of "E.B. Express Provisions Inc.", a business of which Carlos Lopes is a vice president according to New Jersey state records. One earlier check (#2564) was endorsed "Fernandez", the name of another Newark restaurant at which Carlos Lopes was employed as manager before opening Solar Do Minho. That check ultimately was deposited in the account of E. B. Provisions. Another check (#2748) was endorsed Solar Do Minho and deposited in the account of North Newark Wines & Liquors Inc. (see below for similar instance regarding a check written to "Canal's"). Still another was

deposited in the account of EZ Trucking Inc., a business of which a "Licinio Lopes" is a principal according to New Jersey state records.

21. What documentation there is in the field account file to support these checks consists entirely of purported invoices from C. Lopes, C. Lopez, Carlos Lopes and Carlos Lobes for waste removal and Lopes Oil Removal for "oil removal". Plaintiff can find no evidence of the existence of such companies or that the purported removal services were preformed by anyone. One Clopez invoice dated February 1, 2005 was purportedly paid in cash. In that instance, McDonald wrote a check to a company employee at the project, and recorded that the invoice had been paid in cash. Supporting documentation has been collected and will be available to the Court on a future return date.

22. McDonald periodically withdrew from Sevenson's field account at the Diamond Alkali site certain monies intended for per diem cash payments to job site employees. McDonald was found to have been withdrawing more cash than needed to pay per diems and concealing that fact by entering false (higher) totals in the weekly record of per diems paid, improperly keeping excess funds for himself. McDonald wrote checks from the Diamond-Alkali field account to withdraw cash to pay employee per diems. A listing of these improper withdrawals is attached as **Exhibit I**. The supporting documentation for **Exhibit I**, which contains sensitive financial information, signatures, etc., will be available to the Court on a future return date. The total thus converted was $23,640.00.

23. McDonald drew checks to "cash" or to himself for purported business reasons, but Sevenson has discovered through information gathered on the judicial subpoena that he deposited the checks to his GMEC account down on the field account. A listing of those checks down on the field account is set forth at **Exhibit J**. The supporting documentation for **Exhibit J**, which contains sensitive financial information, signatures, etc., will be available to the Court on a future return date. The total thus converted was $41,599.77.

24. In addition to the above items, plaintiff has found checks drawn from the project field account which appear to be further instances of theft by McDonald. Plaintiff is continuing its investigation. The total thus converted was $34,567.35.

**McDonald's Default**

25. Plaintiff notes that McDonald is in default. While he has moved to vacate the default, which plaintiff opposed, his default status currently stands.

26. On March 18, 2001, Sevenson commenced this action by filing the Complaint. On April 29, 2008, Sevenson served the Complaint on McDonald. On May 12, 2008, Sevenson filed an Amended Complaint. Sevenson served the Amended Complaint on McDonald that same day.

27. On August 5, 2008, Sevenson filed an entry of default against McDonald with the Clerk of the Court, which the Clerk entered on August 5, 2008.

28. After a default has been entered by the Clerk, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."

DIRECTTV, Inc. v. Pepe, 431 F.3d 162, 165, n.6 (3d Cir. 2005), quoting Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); see also 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil 3d § 2688, at 58-59 (2d ed. 1998).

29. McDonald's liability, therefore, is not at issue at this time.

**Patricia McDonald**

30. Defendant Patricia McDonald declares in her recently filed Declaration (Docket No. 119), paragraph 8, that she has "no knowledge of the alleged wrongful acts of [McDonald]."

31. Plaintiff contends otherwise in the Amended Complaint (**Exhibit A**).

32. Patricia McDonald was the direct beneficiary of the $165,000 transfer into her bank account on June 11, 2003 (see paragraph 7 above).

33. Patricia McDonald was the direct beneficiary of $30,000 payment to "Cash" on October 22, 2004 (which she endorsed) (see **Exhibit E**).

34. Upon information and belief, Patricia McDonald enjoyed the benefits of a new kitchen, new electrical work, new woodwork, new swimming pool and other improvements to the Sea Isle Property.

**Conclusion**

35. For the foregoing reasons, McDonald's motion to dismiss the *lis pendens* should be denied. Plaintiff remains prepared to enter into an escrow agreement to

allow Patricia McDonald and Gordon McDonald to sell the Sea Island Property and to safeguard the proceeds.

DATED:  Buffalo, New York
        November 6, 2008

                                            _____/s/ Alan J. Bozer_____
                                                        Alan J. Bozer

Doc # 01-2255226.1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

SEVENSON ENVIRONMENTAL SERVICES, INC.,

                  Plaintiff,

vs.                                      Civ. Action No. 08-CV-1386
                                       (RMB-AMD)

GORDON J. MCDONALD, et al.,

                  Defendants

_____

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2008, I electronically filed the foregoing Declaration with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:


ALBERT A. CIARDI , III
aciardi@ciardilaw.com, abouse@ciardilaw.com

ALICE I CUPAIUOLO
acupaiuolo@marcuslaw.net, plaws@marcuslaw.net

BARRY S. GOODMAN
bgoodman@greenbaumlaw.com, ekarlovits@greenbaumlaw.com

CHRISTOPHER M. STRONGOSKY
christopher.strongosky@dlapiper.com

JONATHAN D. CONSADENE
jdc@mmdlawfirm.com

RAYMOND M. BROWN
rbrown@greenbaumlaw.com

SCOTT HOWARD MARCUS
smarcus@marcuslaw.net, plaws@marcuslaw.net

STEPHEN J. DEFEO
sdefeo@brownconnery.com

                */s/ Alan J. Bozer*
                Alan J. Bozer
                Minryu Kim
                Attorney I.D. No.: 025822006
                Suite 3400
                One HSBC Center
                Buffalo, New York  14203-2887
                Telephone No. (716) 847-8400
                mkim@phillipslytle.com

                *Attorneys for* Sevenson Environmental Services, Inc.

Doc # 01-2249075.1