**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SEVENSON ENVIRONMENTAL SERVICES, INC., : : : Plaintiff, : : v. : : GORDON D. MCDONALD, et al., : : Defendants. : : | Civil Action No. 08-1386 (RMB) **MEMORANDUM AND ORDER** |

Appearances:

Minryu Kim, Esquire
Alan J. Bozer, Esquire
Phillips Lytle LLP
3400 HSBC Center
Buffalo, New York 14203
716-847-7053
     Attorneys for Plaintiff

Diane S. Kane, Esquire
Stephen J. DeFeo, Esquire
Brown & Connery, LLP
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
     Attorneys for Defendant Gordon D. McDonald

**BUMB,** United States District Judge:

On March 18, 2008, the Plaintiff, Sevenson Environmental Services, Inc. ("Sevenson"), filed the within Complaint against several defendants including Gordon J. McDonald ("McDonald" or "Defendant"). On April 3, 2008, Sevenson filed a notice of lis pendens with respect to property owned by McDonald and his wife

located at 4478 Venicean Road, Sea Isle City, New Jersey (the "Property"). Paragraphs 45-47 of the Complaint alleged that McDonald embezzled funds from Plaintiff to purchase the Property. These allegations formed the basis for the filing of the lis pendens notice. On May 12, 2008, Sevenson filed an Amended Complaint. Count 23 of the Amended Complaint demanded judgment in the form of a constructive trust upon the Property based on McDonald's alleged use of embezzled funds to purchase and improve the Property.

On November 5, 2008, McDonald filed a Motion to Discharge Lis Pendens and requested that the Court hear the motion on an expedited basis. [Dkt. Nos. 117, 118]. On November 10, 2008, after holding a telephone conference and upon consent of the parties, the Court Ordered that the Notice of Lis Pendens be discharged and that the net sale proceeds, after payment of certain judgments, be held in an interest-bearing escrow account with the Clerk of the Court "until such time as the Court determines their disposition." [Dkt. No. 127].

On December 12, 2008, McDonald sold the Property for approximately $980,000, minus various fees incurred therewith. [See, e.g., Dkt. No. 142, at p. 3]. In compliance with the Court's November 10, 2008 Order, the net proceeds of the sale,

2

$730,475.67, were put into an interest-bearing escrow account maintained by the Clerk of the Court. [Dkt. No. 145].

This matter is now before the Court upon McDonald's request that the escrowed funds be immediately released to him. [Dkt. No. 171]. McDonald argues that because Sevenson has pled a constructive trust claim of only $311,915.48, the Court should enter an order releasing the remaining amount, $418,560.19. Additionally, McDonald requests that the Court hold an evidentiary hearing to determine whether Sevenson has sufficiently proven its probability of success as to the $311,915.48 originally pled. Sevenson counters that because the notice of lis pendens has been discharged, it is no longer required to provide proof of its constructive claim at an evidentiary hearing. Moreover, Sevenson argues that all of the funds from the sale should remain in escrow as security for payment of any judgment Plaintiff ultimately obtains against McDonald.

The lis pendens procedure is governed by Section 2A:15-6 of the New Jersey Statutes Annotated. Specifically, the statute provides:

> In every action, instituted in any court of this State having civil jurisdiction or in the United States District Court for the District of New Jersey, the object of which is to enforce a lien

3

>upon real estate or to affect the title to real estate or a lien or encumbrance thereon, plaintiff or his attorney shall, after the filing of the complaint, file in the office of the county clerk or register of deeds and mortgages, as the case may be, of the county in which the affected real estate is situated, a written notice of the pendency of the action, which shall set forth the title and the general object thereof, with a description of the affected real estate.
>
>No notice of lis pendens shall be filed under this article in an action to recover a judgment for money or damages only.

N.J. Stat. Ann. 2A:15-6.

The filing of a notice of lis pendens has dual purposes. It ensures that a plaintiff's claim related to the property at issue is not defeated by a pre-judgment transfer of the property. <u>Chrysler Corporation v. Fedders Corp.</u>, 670 F.2d 1316, 1328-29 (3d Cir. 1982) ("[e]ven when the claim merely involves tracing the funds to the purchase of the property ... the lis pendens provides security for the ultimate payment of the claim"). It also informs a purchaser of that property that he takes the property subject to the outcome of the litigation. <u>Id</u>. at 1321.

Upon the filing of a lis pendens, a defendant property-owner may move for relief in several ways, two of which are relevant in this case. First, a defendant may file a motion for discharge of the lis pendens under Section 2A:15-7(b), which places the burden on the plaintiff to show that "there is a probability that final

4

judgment will be entered in favor of the plaintiff sufficient to justify the filing or continuation of the notice of lis pendens." N.J. Stat. Ann. 2A:15-7(b).[1]  Second, under Section 2A:15-15, a defendant may seek the discharge of a lis pendens by posting "such sufficient security as the court having jurisdiction of the action shall direct... ."  N.J. Stat. Ann. 2A:15-15.[2]

---

[1]  The full text of Section 2A:15-7(b) provides,

[a]ny party claiming an interest in the real estate affected by the notice of lis pendens may, at any time thereafter, file with the court, in accordance with the Rules Governing the Courts of the State of New Jersey, except as otherwise provided herein, a motion for a determination as to whether there is a probability that final judgment will be entered in favor of the plaintiff sufficient to justify the filing or continuation of the notice of lis pendens.  The plaintiff shall bear the burden of establishing such probability.  The court shall, after hearing and within 10 days, enter a determination as to whether there is a sufficient probability that final judgment will be entered in favor of the plaintiff.  If the court determines that there is a sufficient probability of final judgment in favor of the plaintiff, the notice of lis pendens shall be continued of record and shall have the same effect as provided in subsection a.

[2]  The full text of Section 2A:15-15 provides,

[i]f, in an action for the enforcement against real estate of a claim for the payment of money, except for the foreclosure of a mortgage as to which a notice of lis pendens has been filed, the defendant therein gives such sufficient security as the court having jurisdiction of the action shall direct, to pay such sum of money as may, by the final determination of the action, be ascertained to be chargeable upon the affected real estate, the court may by order discharge the real estate from such claim.

In this case, on November 5, 2008, McDonald filed a motion to discharge the lis pendens under Section 2A:15-7(b) or, in the alternative, under Section 2A:15-15. [See Dkt. No. 118]. Defendant explained that time was of the essence in resolving the motion because, absent immediate relief from the Court, a sale of the Property (due to close the following day, November 7, 2008) would not be able to close.

As mentioned above, based on the urgency of the situation, the Court issued an Order discharging the lis pendens, thereby allowing the sale to go forward, on the condition that the net sale proceeds, after payment of certain judgments, would be held in an interest-bearing escrow account with the Clerk of the Court "until such time as the Court determines their disposition." [Dkt. No. 127]. Thus, the Court's Order essentially granted Defendant's request for relief under Section 2A:15-15 with the caveat that the exact amount of the security Defendants should post would be determined at a later date. In other words, the Court found that the deposit of the net proceeds of the sale of the Property would temporarily serve as sufficient security under Section 2A:15-15 to permit the discharge of the lis pendens.[3]

---

[3] Plaintiff correctly states that the Court's Order discharging the lis pendens "brought this matter under Section 15 for a determination of how much should be retained as security on plaintiff's count for constructive trust." [Dkt. No. 169, at 9].

Defendant's argument that it should not be deprived of its request for an evidentiary hearing under Section 2A:15-7(b) is without merit. Although it is true that McDonald had moved for relief under Section 2A:15-7(b), he also requested, "in the alternative," that the Court discharge the lis pendens to allow the closing to proceed and "simply have Mr. McDonald post an appropriate bond" under Section 2A:15-15. [Dkt. No. 117-2, at 10]. This is precisely what the Court did when it discharged the lis pendens and directed that the net sale proceeds be deposited with the Clerk of the Court. Thus, because the Court granted Defendant's request for relief under 2A:15-15, Defendant's alternative request for relief under 2A:15-7(b) was implicitly denied.[4]

---

[4] Even if the Court were to entertain Defendant's request for relief under Section 2A:15-7(b), it would base its decision on the "pleadings, affidavits and any testimony taken by leave of Court," N.J. Ct. R. 4-63A. In essence, in deciding whether to grant Defendant relief under 2A:15-7(b), the Court would rely on the same evidence it relies on for purposes of determining the appropriate amount of security Defendant should post under Section 2A:15-15. In making this determination, the Court has already had the benefit of the parties' sworn statements and does not see a need for additional hearing testimony. Thus, based on the Court's finding as to the proper security amount (discussed below), even if the Court were to consider Defendant's request for relief under 2A:15-7(b), it would find that Plaintiff had met its burden of justifying the continuation of the notice of lis pendens for that same amount.

Given this background, the question now before the Court is as follows: of the $730,475.67 net sale proceeds deposited with the Clerk of the Court, what amount will serve as "sufficient security" to secure a recovery by Sevenson in the event of a final judgment in its favor as to Count 23 of the Amended Complaint.

Plaintiff implores this Court to defer making this determination until there has been a final adjudication "on the allegations raised in this litigation." [Dkt. No. 169, at 11]. Under Plaintiff's rationale, security could never be posted to discharge a lis pendens until final disposition of the case. Such an interpretation would defeat the purpose of Section 2A:15-15. Moreover, adoption of Plaintiff's argument would inappropriately expand the purpose of Section 2A:15-15.[5] That section is limited solely to the posting of security sufficient to pay a judgment <u>related to the Property</u>. See N.J. Stat. Ann. 2A:15-15 ("to pay such sum of money as may ... be ascertained to be charged upon the affected estate"). Thus, the Court rejects

---

[5] For example, Plaintiff erroneously states that "[e]ven if plaintiff is able to trace only a portion of the escrow on its constructive trust count, the entire sale proceeds currently in escrow should remain there to protect plaintiff which seeks to recover more than $1 million against McDonald alone." [Dkt. No. 169, at 13].

Plaintiff's request to refrain from determining the appropriate disposition of funds until final adjudication of the underlying claims.

As to what amount constitutes "sufficient security" in this case, Plaintiff has been of little assistance to the Court, choosing, instead, to plead for further discovery.  Plaintiff provides no evidence, however, of why it believes additional discovery will increase the amount of its constructive trust claim.  Nor has Plaintiff persuaded this Court that discovery is permitted for purposes of setting sufficient security under Section 2A:15-15.  Thus, to determine the appropriate amount, the Court will turn to the pleadings as well as the supporting and opposing sworn statements submitted by the parties.

Plaintiff's pleadings clearly allege a constructive trust relating to the purchase of the Property in the amount of $323,915.48:

```
    $146,915.48 (bridge loan from Plaintiff Defendant)
  + $177,000.00 (fraudulent payment on June 17, 2007)
    $323,915.48[6]
```

---

[6]  Defendant alleges that this amount should be $311,918.48, because, of the $177,000 payment made to McDonald, only $165,000 was transferred to McDonald and his wife.  However, Plaintiff appears to allege that despite the amount transferred, all $177,000 was used by McDonald and his wife to purchase the Property.  See Amended Compl. [Dkt. No. 15] at ¶¶ 257-58.

Amended Complaint [Dkt. No. 15] at ¶¶ 256-58. Additionally, as set forth in the Declaration of Alan J. Bozer, counsel for Plaintiff [Dkt. No. 120], and Plaintiff's Statement of Position [Dkt. No. 143], the following amounts are alleged to have been fraudulently used to make improvements on the Property:

| | |
|---|---:|
| Swimming pool installation | $14,000.00 |
| Carpeting | $ 1,345.00 |
| Window treatments | $ 1,700.00 |
| Kitchen | $12,341.87[7] |
| Electrical | $10,165.40 |
| Wood Works | + $ 9,859.34 |
| Total Improvements | $49,411.61 |

Adding these sums together, the total amount of embezzled funds allegedly invested in the Property is $373,327.09.

Embezzled Funds Invested in the Property:

| | |
|---|---:|
| Embezzled funds used to purchase | $323,915.48 |
| Embezzled funds used to improve | + $49,411.61 |
| Total embezzled funds invested | $373,327.09 |

Plaintiff also contends that because the value of the Property increased at Sevenson's expense, the Defendant must disgorge that profit as well. Although Plaintiff has done little to assist the Court in this regard, Plaintiff's argument boils down to the following:

---

[7] In its brief [Docket No. 143], Plaintiff refers to a payment in this amount. Attached to the Bozer Declaration was a check in the amount of $7,500. For purposes of this Motion, the Court will rely upon the greater amount.

10

Total Investment in the Property:

```
Purchase price in 2001                              $790,000.00
Improvements                                       +$ 49,411.61
Total funds invested                                $839,411.61
```

Percentage of Investment Made with Embezzled Funds:

```
Total embezzled funds invested     $373,327.09
     Total funds invested        = $839,411.61  =  44.47%
```

Profit Derived from Sale of the Property:

```
Sale price in 2008                                  $980,000.00
Total funds invested                              -  839,411.61
Total profit from sale                              $140,588.39
```

Profit Attributable to Embezzled Funds:

```
Total profit from sale                              $140,588.39
% investments made with embezzled funds           x      44.47%
                                                  $  62,519.66
```

Thus, in the event Sevenson were to prove that McDonald sustained a profit from the fraudulent use of Sevenson's funds, the proportionate amount of such profit would be $62,519.66.

Adding together the amount of embezzled funds allegedly invested in the Property and the proportionate amount of profit attributable to the embezzled funds, the total amount is $435,846.75:

```
Embezzled funds invested in Property                $373,327.09
Proportionate profit from sale                    + $ 62,519.66
TOTAL                                               $435,846.75
```

11

Accordingly, based on the evidence in the record, this Court finds that security in the amount of $435,846.75 is sufficient under Section 2A:15-15.  The amount remaining, $294,628.92 (i.e., $730,475.67 - $435,846.75), shall be returned to Defendant McDonald within five days of the entry of this Memorandum and Order.  McDonald, through counsel, shall contact the Clerk of the Court to arrange return of the funds.


Dated:   February 20, 2009         s/Renée Marie Bumb
                                   RENÉE MARIE BUMB
                                   United States District Judge

12